IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GORDON L. TAGGART, )
)
    Plaintiff, )
)
  -vs- ) Civil Action No. 17-107
)
NANCY A. BERRYHILL,[1] )
COMMISSIONER OF SOCIAL SECURITY, )
)
    Defendant. )

AMBROSE, Senior District Judge.

## OPINION AND ORDER

### Background

Plaintiff Gordon L. Taggart ("Taggart") brings this action pursuant to 42 U.SC. § 405(g) for review of the ALJ's decision denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. He alleges a disability beginning on November 18, 2010. (R. 14) Following a hearing before an ALJ, during which time both Taggart and a vocational expert ("VE") testified, the ALJ denied his claim. Taggart appealed. Pending are Cross Motions for Summary Judgment. *See* ECF docket nos. [11] and [13].

### Legal Analysis

1. Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d

---

[1] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.

1

37, 39 (3d Cir. 1989). Substantial evidence has been defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate. *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the claimant must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986). The

Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P, appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. § 404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id. A district court, after reviewing the entire record, may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

2. The ALJ's Analysis

At step one, the ALJ found that Taggart had not engaged in substantial gainful activity since November 18, 2010, the onset date. (R. 16)[2] At step two, the ALJ concluded that Taggart has the following severe impairments: degenerative disc

---

[2] The ALJ recognized that a new hire report "shows that the claimant was hired at Labor Ready Northeast in April 2016" but found that, evaluating the evidence in a light most favorable to Taggart, the work activity did not amount to substantial gainful activity. (R. 16-17)

disease, alcohol abuse, a depressive disorder, post-traumatic stress disorder ("PTSD"), attention deficit hyperactivity disorder ("ADHD"), and chronic obstructive pulmonary disease ("COPD"). (R. 17)[3]

At step three, the ALJ concluded that Taggart does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, Appendix 1. The ALJ considered Taggart's back condition under Listing 1.04, his respiratory condition under Section 3.00, and his mental impairments under the applicable listings in Section 12.00. (R. 17-18)

Prior to engaging in step four, the ALJ assessed Taggart's residual functional capacity ("RFC").[4] He found Taggart able to perform light work with certain restrictions. (R. 18-26) At step four, the ALJ determined that Taggart was unable to perform past relevant work as a carpenter because such work was deemed by the vocational expert to be a skilled job with a medium exertional level. (R. 26)

Finally, at step five, the ALJ found that, considering Taggart's age, education, work experience, and RFC, there are significant numbers of jobs in the national economy that Taggart can perform. (R. 27) For instance, the ALJ explained that Taggart would be able to perform the requirements of representative occupations such as routing clerk, bottle packer, or marker. (R. 27)

3. Medical Opinions

---

[3] Taggart does not challenge the ALJ's findings regarding his mental impairments. As such, the only issues before this Court relate to Taggart's physical impairments.

[4] "RFC" refers to the most a claimant can still do despite his / her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). The assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and description of his / her limitations. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Additionally, a person's RFC is an administrative finding reserved for the ALJ, not a medical opinion to be rendered by a doctor. 20 C.F.R. §§ 404.1527, 416.927; 20 C.F.R. §§ 404.1546(c), 416.946(c).

Taggart urges that the ALJ improperly disregarded the medical opinions proffered by Dr. Scott Nesbitt, his primary care physician, and by Dr. Christina Sabeh, a consulting physician. *See* ECF Docket No. 12, p. 10-14. The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 416.927(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id*, § 416.927(c)(2). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. *Id*. Also, "the more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." *Id*, § 416.927(c)(4). In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). However, 'where … the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. *Id*. Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating

physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

*Becker v. Comm'r. of Soc. Sec. Admin.*, Civ. No. 10-2517, 2010 WL 5078238, at * 5 (3d Cir. Dec. 14, 2010).

The ultimate issue of whether an individual is disabled within the meaning of the Act is for the Commissioner to decide. Thus, the ALJ is not required to afford special weight to a statement by a medical source that a claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d)(1), (3); *Dixon v. Comm'r. of Soc. Sec.*, 183 Fed. Appx. 248, 251-52 (3d Cir. 2006) (stating, "[o]pinions of disability are not medical opinions and are not given any special significance."). Although the ALJ may choose who to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." *Diaz v. Comm'r. of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). The ALJ must provide sufficient explanation for his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). In other words, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r. of Soc. Sec.*, 529 F.3d 198, 203-04 (3d Cir. 2008).

Turning first to the ALJ's treatment of Dr. Nesbitt's medical opinions, Taggart contends that the ALJ misinterpreted Nesbitt's records. In November of 2015, Dr. Nesbitt completed a Physical Capacity Evaluation at the request of Taggart's attorney. Dr. Nesbitt opined that during the course of an eight-hour day, Taggart could alternate sitting and standing at will, with normal breaks, for a total of six hours. (R. 468) He

6

further represented that Taggart could stand continuously for 15 minutes, walk continuously for 15 minutes, and sit continuously for 30 minutes. (R. 468) Dr. Nesbitt explained that Taggart has decreased range of motion in his neck and lumbar spine and palpable pain in the mid-thoracic spine region. (R. 473) He further commented that Taggart also displays increasing amounts of pain "for twisting and bending extension and leaning to both sides." (R. 473) He noted that Taggart had severe spinal stenosis and the pain associated with it required surgery. (R. 473) The surgery successfully eliminated the pain down Taggart's legs but moderate to severe pain remains in Taggart's low back and is treated with narcotic medication. (R. 473) In a subsequent Physical Capacity Evaluation dated May 24, 2016, Dr. Nesbitt again represented that Taggart could stand continuously for 15 minutes, walk continuously for 15 minutes, and sit continuously for 30 minutes. (R. 542) He also opined that, during an 8-hour workday, Taggart can sit, with normal breaks, for a total of 4 hours; can stand, with normal breaks, for a total of 2 hours; and will have to lie down for a total of 2 hours. (R. 543) Nesbitt provided that same explanation for his findings. (R. 544)

Significantly, the ALJ gave these opinions "limited weight." He did not reject the opinions outright. (R. 26) The ALJ explained that Nesbitt's opinions were not supported by his own findings. This is an appropriate reason under the regulations. See 20 C.F.R. §§ 404.1527(c) and 416.927(c). Further, substantial evidence of record supports the ALJ's conclusion in this respect. The ALJ detailed Nesbitt's treatment records both pre and post back surgery in 2015, documented the positive response to back surgery, noted Taggart's return to some work through Labor Ready, and Taggart's comments in May of 2016 that he was feeling good in general and exhibiting just a "little bit" of back

7

pain and that his back pain is "stable." (R. 19-22, 545-546) Consequently, I reject Taggart's contention that the ALJ's treatment of Dr. Nesbitt's opinions necessitates remand.

I reach a similar conclusion with respect to the ALJ's treatment of Dr. Sabeh's opinion. Taggart presented to Sabeh in November of 2015 for a consultative examination. (R. 474-478) Upon examining Taggart, Sabeh opined that Taggart was limited to lifting and carrying up to 10 pounds on a frequent basis; to sitting for 8 hours at one time without interruption; to standing for 2 hours at one time without interruption; and to walking for 1 hour at a time without interruption. (R. 479-480) She further assessed that Taggart could sit for a total of 8 hours in an 8-hour workday; could stand for a total of 4 hours in an 8-hour workday; and could walk for a total of 2 hours in an 8-hour workday. (R. 480) Dr. Sabeh determined that Taggart could occasionally operate foot controls, climb stairs and ramps, balance, stoop, kneel, crouch, and crawl, and could never climb ladders and scaffolds. (R. 481-482) She also concluded that Taggart could "never" be exposed to unprotected heights, moving mechanical parts, humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme cold, and extreme heat, and that he could only occasionally be exposed to operating a motor vehicle and vibrations. (R. 483) The ALJ gave Sabeh's opinion "limited weight." The ALJ explained that Sabeh's opinion:

> appears to overstate the claimant's level of impairment and appears to have been based on an acceptance of subjective complaints, although the objective findings on examination did not reflect abnormalities such as significant sensory, motor and reflex loss, etc., indicative of so limiting a musculoskeletal impairment. Although the claimant had increased back symptoms in 2015, these were addressed surgically, and the evidence documents some significant improvement, particularly in neurological symptoms. Dr. Sabeh also documented

8

few significant findings on examination, and referenced a wide range of
independent activities more suggestive of light work.

(R. 24)

Taggart contends that "[t]he ALJ's statement that Dr. Sabeh 'documented few significant findings on examination' is not accurate." *See* ECF Docket no. 12, p. 14. I disagree and find that significant evidence of record supports the ALJ's finding in this regard. For instance, Sabeh noted that Taggart lives alone, cooks, cleans, does laundry, shops, showers, bathes, dresses himself, watches television, listens to the radio, reads, and socializes with friends. (R. 24, 475-76) She further found that Taggart did not appear to be in acute distress; that his gait and stance were normal; that he was able to walk on heels and toes without difficulty; that he could squat fully, and that he could get on and off the exam table and rise from a chair without difficulty. (R. 24, 476) Further, he did not use an assistive device. (R. 24, 476) Sabeh noted that Taggart's flexion at his waist was diminished to about 80 degrees, but found that there was no evidence of joint deformity, scoliosis, kyphosis, or abnormality in the thoracic spine. (R. 24, 477) A straight leg test was negative. (R. 24, 477) Taggart's joints were stable and nontender. (R. 477) His arm and leg strength was 4+/5. (R. 24, 477) In a range of motion chart, Sabeh only noted a limitation with respect to flexion extension of the lumbar region. (R. 24, 486) The ALJ also noted that Sabeh's findings were inconsistent with Taggart's return to some work activity. (R. 24-25) Thus, substantial evidence supports the ALJ's findings and there is no basis for remand.

4. Residual Functional Capacity

Next, Taggart argues that the ALJ erred in formulating his RFC. He contends that "there is substantial evidence that Plaintiff is not able to physically do the work noted in

9

the residual functional capacity determined by the ALJ." *See* Docket No. 12, p. 15-16.
This is the wrong standard. The:

> question is not whether substantial evidence supports Plaintiff's claims, or whether there is evidence that is inconsistent with the ALJ's finding. … Substantial evidence could support both Plaintiff's claims and the ALJ's finding because substantial evidence is less than a preponderance. *Jesurum v. Sec'y. of U.S. Dep't. of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (*citing, Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If substantial evidence supports the ALJ's finding, it does not matter if substantial evidence also supports Plaintiff's claims. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003).

*Hundley v. Colvin*, 2016 WL 6647913, * 2 (W.D. Pa. Nov. 10, 2016), *citing, Weidow v. Colvin*, Civ. No. 15-765, 2016 WL 5871164, * 18 (M.D. Pa. Oct. 7, 2016). As such, I am not convinced by Taggart's assertions that Nesbitt's and Sabeh's reports indicate that he would not be able to perform light work. *See* ECF Docket No. 12, p. 15-16.

Nor am I convinced by Taggart's reference to the *de minimis* showing of a severe impairment at step two. Taggart contends that the ALJ erred in failing to discuss limitations caused by his back pain, cervicalgia, and osteoarthritis in his hands and knees. I disagree. The ALJ acknowledged that Nesbitt noted joint pain in the neck and hands, but observed that Nesbitt found "no true radicular pain and no weakness." (R. 21) Further, as both the ALJ and Sabeh noted, Taggart's hand and finger dexterity was intact and his grip strength was 5/5 in both hands. (R. 24, 477) Additionally, Sabeh's report does not indicate any restrictions related to knees. (R. 474-484) Further, contrary to Taggart's suggestion, the ALJ did not completely ignore Sabeh's indication that he should avoid certain environmental limitations. The ALJ agreed that Taggart should avoid concentrated fumes, odors and gases, that he should avoid extreme cold and

10

extreme heat, and similar environmental irritants. (R. 18-19) Consequently, I find no error in the ALJ's formulation of the RFC in this regard.

     5. <u>Hypothetical Question</u>

Taggart also argues that remand is necessary because the ALJ disregarded the testimony of the vocational expert ("VE"). *See* ECF Docket No. 12, p. 17-18. In particular, Taggart contends that the VE testified that an individual who needed to lie down at work, or miss more than one day of work per month, would not be employable. *Id.*, p. 17. He further urges that the VE testified that the positions of routing clerk, bottle packer, and marker require frequent use of hands for reaching, handling, and fingering, all of which are inconsistent with his impairments. *Id.*, p. 17-18.

I disagree. An ALJ is only required to accept the responses that accurately reflect a claimant's impairments. *See Podedworny v. Harris*, 754 F.2d 201, 218 (3d Cir. 1984); *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Here, as set forth in the preceding sections, the record reveals substantial evidence that the hypothetical questions the ALJ adopted accurately reflected Taggart's impairments.

Because the ALJ properly considered Taggart's limitations supported by the record, I find no error on this issue.

     6. <u>Taggart's Credibility</u>

Finally, Taggart takes issue with the ALJ's findings regarding his credibility. It is well-established that the ALJ is charged with the responsibility of determining a claimant's credibility *See Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974). The ALJ's decision must "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and be sufficiently specific to make clear to the

individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." S.S.R. 96-7p. Ordinarily, an ALJ's credibility determination is entitled to great deference. *See Zirsnak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014); *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003).

As the ALJ stated, he must follow a two-step process when assessing pain: first, he must determine whether there is a medical impairment that could reasonably be expected to produce the plaintiff's pain or other symptoms; and, second, he must evaluate the intensity, persistence, and limiting effects of the plaintiff's symptoms to determine the extent to which they limit the plaintiff's functioning. (R. 19) Pain alone, however, does not establish disability. 20 C.F.R. § 404.1529(a); 416.929(a). Allegations of pain must be consistent with objective medical evidence and the ALJ must explain the reasons for rejecting non-medical testimony. *Burnett v. Comm'r. of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000).

In evaluating whether a plaintiff's statements are credible, the ALJ will consider evidence from treating, examining and consulting physicians; observations from agency employees; and other factors such as the claimant's daily activities; descriptions of the pain; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medications; treatment other than medication; and other measures used to relieve the pain. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 96-7p. The ALJ will also look at inconsistencies between the claimant's statements and the evidence presented. *Id.* Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about his or her limitations or symptoms is less than fully credible. *See Burns v. Barnhart*, 312 F.3d 113, 129-30 (3d Cir. 2002).

12

Here, the ALJ acknowledged that Taggart's medically determinable impairments could reasonably be expected to cause the symptoms of which he complained, but found that Taggart's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…." (R. 20) After a review of the record, I find that the ALJ followed the proper method to determine Taggart's credibility. As laid out in his decision, the ALJ considered the factors set forth above and adequately explained the reasoning behind his credibility determinations. (R. 19-26) Indeed, the AL directly addressed Taggart's testimony that he experienced various forms of pain and did not reject his allegations entirely. Rather, the ALJ incorporated numerous limitations related to Taggart's pain complaints in the RFC finding. See (R. 18-19) (RFC restricting Taggart to "light" work and prohibiting work in areas of concentrated fumes, odors, gases, temperature extremes, or other similar environments) Thus, I find that the ALJ properly evaluated Taggart's credibility as required by 20 C.F.R. § 404.1529 and SSR 96-7p. Moreover, Taggart provides a total of one substantive sentence in support of his argument for remand on this issue: "[i]n this case, the overwhelming evidence supports the conclusion that Plaintiff has had severe pain in his low back and other areas of his body and those complaints were entitled to great weight." *See* Docket No. 12, p. 19. Taggart's argument is neither well-developed nor supported by any citation to the record. I find it to be entirely unpersuasive.

Therefore, I find no error in this regard. Consequently, remand is not warranted on this basis.

An appropriate order shall follow.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GORDON L. TAGGART<br>    Plaintiff, | )<br>)<br>) | |
| -vs- | ) | Civil Action No. 17-107 |
| NANCY A. BERRYHILL,[5]<br>COMMISSIONER OF SOCIAL SECURITY, | )<br>)<br>)<br>) | |
|     Defendant. | ) | |

AMBROSE, Senior District Judge.

## **ORDER OF COURT**

Therefore, this 6th day of March, 2018, it is hereby ORDERED that the decision of the ALJ is affirmed. It is further ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 11) is DENIED and Defendant's Motion for Summary Judgment (Docket No. 13) is GRANTED.

                                      BY THE COURT:

                                      /s/ Donetta W. Ambrose
                                      Donetta W. Ambrose
                                      United States Senior District Judge

---

[5] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.